# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 05-CV-4490 (JFB) (ARL)

———————————

JOSEPH V. ALEO,
FRANK H. ARETZ, PETER CAPRIA, JOHN C. CONNOLLY,
EDWARD J. CREAN, JR., EDWARD G. DOSTER,
ROGER R. EHRLER, LOUIS B. HOLDER, JOHN J. KINIRONS,
GEORGE C. LAIDLAW, JOSEPH MESSINA, RICHARD NOFI,
THOMAS RUSSO, WILLIAM STEIGER, JR.,

Plaintiffs,

VERSUS

KEYSPAN CORPORATION,

Defendant.

———————————

MEMORANDUM AND ORDER
August 7, 2006

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff retirees brought the instant action against their former employer, defendant KeySpan Corporation, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, challenging a reduction in their health care benefits. Defendant moves to dismiss the action, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion is denied in its entirety.

I. BACKGROUND

Defendant KeySpan Corporation ("KeySpan")[1] provides medical coverage for certain employees and retirees under an

---

[1] KeySpan Energy and Long Island Lighting Company ("LILCO") are predecessor companies to KeySpan, and are referenced in various documents relevant to the instant case. For the purposes of the opinion, references to "KeySpan" collectively refers to KeySpan Corporation and its predecessor companies.

employee benefit plan, entitled the "Managed Care Program–LILCO" (hereinafter "the Plan"). The Plan's documentation includes a reservation of rights clause, which reads:

> [The Company] intends to continue the Managed Care Program, but reserves the right, subject to approval by its Board of Directors and contracts to which it is a party, including collective bargaining agreements, to terminate, amend, or modify the Managed Care Program.

(Def.'s Mem. Ex. A at 51.)

In late 1998, KeySpan initiated an early retirement program, called the "Special Retirement Program for Management Employees" ("SRP"). In support of this program, the Company sent a package of materials outlining the early retirement program to selected management employees. One of the documents provided an overview summary of the SRP (hereinafter "SRP Summary").[2] The introduction of the SRP Summary informs the recipient that it is intended to provide them with "a detailed explanation of the Program." (Def's Mem. Ex. B at i.) The introduction also indicates that the document should be considered alongside other documents included in the package, including the KeySpan Energy Summary for Health and Life Insurance Plans. (*See id.*) The introduction concludes by noting that the purpose of the SRP was to help "achieve reductions in the Company's overall staffing levels as part of the Company's commitment to achieve O&M savings to be more competitive in today's business environment." (*See id.*)

The SRP Summary provides specific information about the retirement benefits that were to be provided to management employees who took advantage of the SRP. (*See id.* at 10-12.) First, it notes that, although the retiree heath benefits program was normally only provided to employees with at least fifteen years of service, the SRP only required ten years of employment for eligibility. (*See id.* at 10.) The document indicates that details of the program were explained in an accompanying document, the summary of Retirement Health Care Benefits (hereinafter "Health Care Summary").[3] (*See*

---

[2] The Plan's documentation is attached as Exhibit A to defendant's motion to dismiss. The "SRP Summary" document is formally entitled "KeySpan Energy–Special Retirement Program for Management Employees (Long Island)," and is attached as Exhibit B to defendant's motion to dismiss. The Court may consider these documents for the purposes of this motion because they are referred to, and are integral to, the complaint. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) (noting that for the purposes of a motion to dismiss, a complaint is considered to include documents referred to therein); *see also Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) ("Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is 'integral' to the complaint, and we consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle to it relief.")*; Merkent v. SI Bank & Trust Spring 2004 Severance Benefit Plan*, No. 05-CV-2449 (JFB), 2006 WL 898086, at *1 n.1 (E.D.N.Y. Apr. 5, 2006) (considering provisions of severance plan that was referenced in complaint as part of motion to dismiss).

[3] This document is formally entitled "KeySpan Energy–Summary of Retiree Health Care Benefits," and is attached as Exhibit C to defendant's motion to dismiss. Again, the Court considers this document for the purposes of this

2

*id.*) Next, the SRP Summary discusses upcoming anticipated changes in retiree health and life insurance:

> *What Changes are Anticipated for Retiree Health and Life Insurance?*
>
> As you consider retirement, you should be aware that we are considering plan modifications to retiree Health and Life Insurance coverage. *If you elect to retire during the special program you <u>will not be</u> subject to the changes anticipated and will continue to participate in the retiree benefit plans provided to existing retirees. The changes anticipated are described on the following chart.*

(*Id.*) (emphasis and added emphasis in original). The following page includes a chart entitled "Summary of Benefit Changes Anticipated for Retirees After 1/1/99." (*Id.* at 11.) The first column is entitled "Benefit Design Under Special Retirement Program," and the second column is entitled "Changes Anticipated for Employees Retiring After 1/1/99." (*Id.*) One of the rows is entitled "Medical Benefit Plan Changes." (*Id.*) In that row, the response under the first column, referring to SRP participants, is "None," and the response under the second column, referring to employees retiring after January 1, 1999, is "Medical benefits will be subject to change consistent, with changes made each year to active employee benefits." (*Id.*) The SRP Summary does not include a reservation of rights clause.

The Health Care Summary provides more detail about health care benefits under the SRP, including information about deductibles, copays, extent of coverage provided, and various exclusions. (Def.'s Mem. Ex. C. at 1-3.) The conclusion of the Health Care Summary includes the following, emphasized in bold text:

> The information contained in this Summary of Benefits is for informational purposes only and should not be considered a substitute for Plan documents. Benefits may vary by state. Final interpretation of your rights and benefits under the Plan will be governed by the Plan documents. The Company shall have the maximum authority permitted by law to construe and apply the provisions of the Plan.

(*Id.* at 4.) The Health Care Summary does not include a reservation of rights clause.

Plaintiffs are retirees of KeySpan who retired on December 31, 1998, pursuant to the SRP. (Am. Compl. ¶¶ 5, 6.) Plaintiffs allege that they interpreted the SRP to promise them unchanged lifetime health insurance benefits for them and their spouses, based upon the materials they received and statements made to them by KeySpan representatives. (*Id.* ¶¶ 10, 18, 25, 31, 40-53.) Further, they allege that this promise induced them to accept the early retirement package offered by the SRP. (*Id.* ¶¶ 11, 19, 31.) On July 1, 2004, KeySpan reduced the health insurance benefit provided to plaintiffs and their surviving spouses. (*Id.* ¶ 12.) As a result of this reduction in benefits, plaintiffs filed the instant action, claiming denial of benefits, promissory estoppel, and breach of fiduciary duty under ERISA. Defendants moved to dismiss the instant action, pursuant to Fed. R. Civ. P.

---

motion to dismiss because it is referred to in the complaint. *See Chambers*, 282 F.3d at 152.

12(b)(6).

The Court held oral argument in this case on July 14, 2006. At oral argument, the Court granted leave to plaintiffs to file an Amended Complaint to address the alleged factual pleading insufficiencies identified by defendant in plaintiffs' third claim, breach of fiduciary duty under ERISA. Plaintiffs filed an Amended Complaint on July 25, 2006. By letter dated August 3, 2006, counsel for defendant notified the Court that defendant was withdrawing its motion to dismiss with respect to the breach of fiduciary duty claim in light of the Amended Complaint. Accordingly, the Court only considers defendant's motion to dismiss the first two claims of the Complaint: (1) ERISA denial of benefits; and (2) promissory estoppel.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

## III. DISCUSSION

### A. ERISA Denial of Benefits Claim

Plaintiffs first claim is brought pursuant to ERISA § 502(a)(2), which allows a plan participant to bring a civil action "to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[4] Essentially, this section allows a plaintiff to assert a "contractual right under a benefit plan." *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir. 1999). Specifically, plaintiffs allege that KeySpan contractually promised to provide unchanged lifetime health benefits in the SRP. (Am. Compl. ¶¶ 10, 18.)

Under ERISA, the default rule is that the existence of an employee health plan, standing alone, does not give employees a substantive right to continued benefits–an employer may modify or terminate such benefits at will. *Curtiss-Wright Corp. v. Schnoonejongen*, 514 U.S. 73, 78 (1995) ("ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."); *see also Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 133 (2d Cir. 1999) (stating the general rule that under ERISA an employer welfare plan is not vested and that an employer has the right to terminate or unilaterally amend the plan at any time). However, an employer may agree to vest employee welfare benefits. *See Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d

---

[4] 29 U.S.C. § 1132(a)(1)(B).

4

90, 97 (2d Cir. 2001) ("If a plan document unambiguously indicates whether retiree benefits are vested, the unambiguous language should be enforced.") (internal quotation and citation omitted). "Thus, even though [an employer] is 'generally free' to modify its [welfare benefit] plan, if [the employer] promised vested benefits, those benefits will be enforced." *Id.* To support a claim that a promise of lifetime health or welfare benefits is contractually vested, a plaintiff must point to "specific written language that is reasonably susceptible to interpretation as a promise to vest the benefits." *Bouboulis v. Transport Workers Union of Am.,* 442 F.3d 55, 60 (2d Cir. 2006) (quoting *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 84 (2d Cir. 2001)).

In support of their contractual vesting claim, plaintiffs quote language from the SRP Summary, specifically the passage and accompanying chart describing anticipated changes to retiree health and life insurance. (Am. Compl. ¶¶ 9-10; Pl.'s Mem. at 6.) As previously set forth, the passage provides:

> *What Changes are Anticipated for Retiree Health and Life Insurance?*
>
> As you consider retirement, you should be aware that we are considering plan modifications to retiree Health and Life Insurance coverage. *If you elect to retire during the special program you <u>will not be subject to the changes anticipated</u> and will continue to participate in the retiree benefit plans provided to existing retirees. The changes anticipated are described on the following chart.*

(Def.'s Ex. B at 10.) (emphasis and added emphasis in original). This language plainly provides two distinct promises to SRP participants: (1) that they will not be subject the specific "changes anticipated," listed in the chart; and (2) that they will continue to participate in the retiree benefit plans that are provided to existing retirees. At first glance, the plain language of the first promise does not include an explicit pledge to insulate SRP participants from any changes to their health benefits, as the repeated references to "changes anticipated," suggests that such promise protects them only from the specific changes listed in the accompanying chart. However, beyond specific references to medical plan benefit levels in the chart,[5] the chart includes an entry entitled "Medical Benefit Plan Changes," which responds "None" for SRP participants. By comparison, the next column of the chart indicates that those who retire after January 1, 1999 would be subject "to change consistent, with changes made each year to active employee benefits." (*See id.* at 11.) This entry on the chart could reasonably be interpreted to mean, in conjunction with the earlier description, that the "changes anticipated" do not constitute a single set of defined changes, but rather contemplate ongoing, periodic changes which are unknown at the time that employees were being offered a chance to participate in the SRP. The indication of repeated, periodic changes in benefit levels stands in stark contrast to the simple statement that changes for benefit levels for SRP participants would be "None." Consequently, the Court finds that this language is reasonably susceptible to interpretation as a promise that eligible SRP participants would not be subject to any

---

[5] For example, the chart notes that, under the SRP, participants do not need to make contributions, and surviving spouses are eligible for coverage at a cost of $25 per month. (*See id.* at 11.)

5

changes in their health benefit plan.

That notwithstanding, defendant argues that plaintiffs are not entitled to rely on language in the SRP Summary to discern a promise of contractual vesting because it is merely an "informal communication" and is not the governing plan document. *See Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir. 1988) (concluding that absent fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries). Additionally, defendant argues that even if the language of the SRP Summary may be considered, and even if it could be construed to ambiguously provide a promise of lifetime health benefits, any such ambiguity is vitiated by the reservation of rights clause located in the Plan's documentation. *See Joyce,* 171 F.3d at 136 (finding that even if the language in a summary plan description was ambiguous as to whether vested benefits were promised, an explicit reservation of rights clause is sufficient to vitiate any potential ambiguity).

As a threshold matter, the Court does not read *Moore* to prohibit plaintiffs from relying on language in the SRP Summary to claim that defendant promised vesting of lifetime health benefits. In *Moore*, the Second Circuit confronted a situation in which plaintiff employees were claiming contractual vesting based upon promises of "lifetime" benefits made in informal communications to employees, including filmstrip presentations, employee newspapers, and letters addressed to active and retired employees. *See* 856 F.2d at 492. The Second Circuit found that these "informal communications," which did not purport to be complete and binding statements of plan terms, could not be relied upon to discern a promise of contractual vesting that could trump plain statements reserving the right to amend or terminate benefits, which were located in the plan's documentation, the plan's summary plan documents ("SPDs"),[6] and all but one of six booklets released by the employer which explained the terms of the plan. *See id.* at 492-93. However, although *Moore* discussed the public policy reasons for not considering binding promises made outside of official plan documentation SPDs,[7] the Second Circuit has allowed plaintiffs to look to statements made in similar summaries of special early retirement programs for promises of contractual vesting.[8] *See Abbruscato*, 274 F.3d at 97-98.

---

[6] By SPDs, *Moore* refers to summaries promulgated in compliance with the obligation imposed on employers providing benefit plans under 29 U.S.C. § 1022(a)(1).

[7] *Moore*, 856 F.2d at 492 ("Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.").

[8] This distinction makes sense, as documentation providing information about such a special early retirement program is considerably more formal than the communications made in *Moore*. As opposed to casual presentations made in *Moore* that were designed to provide information about an employee welfare plan that already had a wealth of documentation, the SRP Summary is a primary, formal source regarding the details of the SRP, a distinct modification of the standard plan. In fact, the SRP Summary itself asserts its own importance, noting that it is intended to provide "a detailed explanation of the Program." (Def.'s Mem. Ex. B. at i.)

6

Similarly, the Court rejects defendant's argument that any potential ambiguity in the language of the SRP Summary is vitiated by the reservation of rights clause in the Plan's documentation. Although the Second Circuit has held that unambiguous reservation of rights clauses can nullify language that ambiguously promises vested benefits,[9] it has also limited the implementation of that canon of construction to instances in which the reservation of rights clause and the language ambiguously promising lifetime benefits appear in the same document. *Abbruscato*, 274 F.3d at 99-100 ("Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits . . . In adopting this approach, we emphasize that our holding today is limited to those situations where the *same* document contains both the promise and the reservation of rights."). Here, the SRP Summary does not contain a reservation of rights clause itself, and *Abbruscato* did not address the situation where the reservation of rights clause is located in a separate document.

In the instant case, the Court declines to extend *Abbruscato* to hold as a matter of law that the existence of the reservation of rights clause in the Plan documentation vitiates any ambiguity in the SRP Summary. First, in order for a reader of the SRP Summary to analyze the language alongside the reservation of rights clause in the Plan's documentation, a reader would be required to: (1) follow the notice in the SRP Summary that the information in the Health Care Summary should be considered alongside it; (2) take heed of the disclaimer in the Health Care Summary that it is an incomplete description of the benefits, and that final interpretation of his or her rights would be controlled by the Plan's documentation; and (3) notice the reservation of rights clause located on page 51 of the Plan's documentation. Next, assuming that a reader successfully navigated these cross-references to be able to analyze the language of the SRP Summary alongside the reservation of rights clause located in the Plan's documentation, he or she could reasonably conclude that the SRP eliminates the effect of the reservation of rights clause for SRP participants. As discussed, the Plan documentation applies to active employees and retirees who are not SRP participants. The chart in the SRP Summary indicates that one of the advantages of enrollment in the SRP is that their anticipated changes in benefits would be "None," as opposed to other retirees, who would be subject to changes "consistent, with changes made each year to active employee benefits." (Def.'s Ex. B at 11.) A reasonable person could interpret this to mean that the reservation of rights clause, although effective as against active employees and retirees, would no longer be effective if they chose to participate in the SRP.

In sum, the Court finds that the language in the SRP Summary is ambiguous because it could be reasonably construed to promise lifetime health benefits to SRP participants. Although extrinsic evidence may later shed light on the meaning of language, the ambiguity is sufficient for the Court to conclude that plaintiffs have validly stated a claim for denial of benefits under ERISA. Accordingly the Court denies defendant's

---

[9] *Joyce*, 171 F.3d at 136 (holding that unambiguous reservation of rights clauses vitiated potential ambiguity which promised lifetime health benefits).

7

motion to dismiss that claim under Fed. R. Civ. P. 12(b)(6).

### B. Promissory Estoppel Claim

Defendant also seeks dismissal of plaintiffs' promissory estoppel claim. In order to state a claim for promissory estoppel, a plaintiff must allege: "'(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.'" *Abbruscato*, 274 F.3d at 100-01 (quoting *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999)). "Additionally, an ERISA plaintiff must adduce not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to satisfy an extraordinary circumstances requirement as well." *Abbruscato*, 274 F.3d at 101 (internal quotation and citation omitted).[10]

Defendant's sole argument is that plaintiffs have failed to allege a cognizable "promise" to support a promissory estoppel claim, for the same reasons that they argued that plaintiffs have failed to state a claim for denial of benefits under ERISA. (*See* Def.'s Mem. at 13-14.) However, as discussed *supra*, the Court has found that plaintiffs have satisfied their burden to identify specific written language that is reasonably susceptible to interpretation as a promise for lifetime benefits, and that the Court cannot conclude as a matter of law that the reservation of rights clause in the Plan's documentation was insufficient to vitiate that promise. Accordingly, the Court denies defendant's motion to dismiss plaintiff's claim for promissory estoppel under ERISA.

### IV. CONCLUSION

In sum, the defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED in its entirety. The parties shall proceed with discovery forthwith, pursuant to the individual rules of the Honorable Magistrate Judge Arlene R. Lindsay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 7, 2006
Central Islip, New York

\* \* \*

The attorney for the plaintiffs is Alvin Green, Esq., of Seham, Seham, Meltz & Petersen, 145 E. 48th Street, Suite 5-F, New York, New York, 10017. The attorneys for the defendant are Michael P. Monaco, Esq., of Song Mondress PLLC, 720 Third Avenue, Suite 1500, Seattle, Washington 98104 and Walter J. Lundahl, Esq., of KeySpan Corporation, 175 East Old Country Road, Hicksville, New York 11801.

---

[10] Courts have held that the inducement of an employee to retire through promises made in early retirement severance packages constitute "extraordinary circumstances" for the purposes of an ERISA promissory estoppel claim. *See Abbruscato*, 274 F.3d at 101; *see also Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 79-80 (2d Cir. 1996).

8